1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   HENDRIK BLOCK,                          No.  1:15-cv-00991-DAD-CKD

12              Plaintiff,

13        v.                                 **ORDER AWARDING FEES AND**
                                             **EXPENSES**
14   STARBUCKS CORPORATION, et al,

15              Defendants.

16

17        Presently pending before the court is plaintiff Hendrik Block's March 20, 2018 motion for

18   attorneys' fees.[1]  (ECF No.  74.)  Defendant Starbucks Corporation opposed the motion, and

19   plaintiff replied.  (ECF Nos. 78, 79.)  Pursuant Local Rule 230(g), on March 30, 2018, the

20   undersigned took this matter under submission without oral argument.  (ECF No. 77.)  Upon

21   review of the documents in support and opposition, and good cause appearing therefor, THE

22   COURT FINDS AS FOLLOWS:

23   I.        RELEVANT BACKGROUND

24        Plaintiff initiated this action on June 30, 2015, asserting denial of his right of access under

25   the Americans with Disabilities Act ("ADA").  (ECF No. 1.)  The first amended complaint

26   ("FAC") was filed on March 22, 2016.  (ECF No. 24.)  The FAC alleged fifteen barriers in

27

28   _____
     [1] This matter proceeds before the undersigned pursuant to the parties' stipulation.  (ECF No. 71.)

violation of the ADA (ECF No. 24 at 3–4) and stated claims against defendants pursuant to the ADA, the California Unruh Act, and California Health and Safety Code § 19953 et seq. (ECF No. 24 at 5–9). Plaintiff alleged that he visited defendants' location on one occasion (id. at 2) and he sought the statutory minimum of $4,000 in damages "for each offense" (id. at 8 (emphasis in original)). During discovery, plaintiff indicated that he sought $4,000 in statutory damages. (See Supplemental Declaration of Zachary M. Best, ECF No. 79-1 ["Best Supp. Decl."] ¶ 3, Exh. A.)

After completing discovery, plaintiff and defendant Starbucks Corporation ("defendant")[2] each filed cross motions for summary judgment, which the court took under submission on June 20, 2017. (ECF Nos. 43, 44, 50.) On August 28, 2017, the parties conducted a settlement conference before the undersigned. (ECF No. 57.) A settlement agreement was ultimately reached on January 25, 2018. (ECF No. 69.)

On February 8, 2018, this matter was dismissed with prejudice in its entirety. (ECF No. 71.) Pursuant to the parties' stipulation, however, the undersigned "retain[ed] jurisdiction over this matter for the purpose of adjudicating [plaintiff]'s motion for attorneys' fees, costs, and litigation expenses," and plaintiff was ordered to file a fees motion within 45 days. (Id. at 1.)

The court subsequently granted the parties' request to file the settlement agreement under seal in its entirety, and granted plaintiff permission to file a redacted memorandum of points and authority in support of his fees motion. (ECF No. 73.) Thereafter, plaintiff filed a fees motion and redacted memorandum; defendant filed a redacted opposition; and plaintiff filed a redacted reply. (ECF Nos. 74, 78, 79.)

On May 31, 2018, after a preliminary review of the briefing, the court could not discern good cause for the redactions, and ordered parties to submit a request to seal pursuant to the Local Rules, explaining why portions of the briefing should remain redacted. (ECF No. 82 at 2.) The parties have each responded. (ECF Nos. 83–84.)

---

[2] There were originally two named defendants in this matter: Starbucks Corporation and Mathews and Associates-2, LLC. (ECF No. 1.) However, on April 1, 2016, defendant Mathews and Associates-2, LLC was dismissed from the action. (See ECF Nos. 26 at 27.) Throughout this order, any reference to "defendant" means Starbucks Corporation, unless the court specifically refers to defendant landlord Mathews and Associates-2, LLC ("defendant landlord").

II.     DISCUSSION

   A.     Defendant's opposition

      As a preliminary consideration, it is necessary to discuss defendant's opposition to plaintiff's fees motion in detail because the opposition is based upon several errors and misrepresentations that bear directly on the merits of both the request to seal and the fees motion.

      First, defendant asserts without explanation that "[p]laintiff alleged twenty-two barriers in violation of the ADA in his First Amended Complaint." (ECF No. 78 at 2.) However, the FAC clearly alleged only fifteen such barriers. (See ECF No. 24 at 3–4.)

      Second, defendant asserts that the settlement "only contains an agreement to 'remedy' . . . four distinct issues." (ECF No. 78 at 3.) Yet, defendant mistakenly construes section 2.2.1 of the settlement agreement as resolving a single issue: "moveable furniture at the top of the curb landing from disabled parking." (ECF No. 78 at 3.) As plaintiff correctly points out, "[s]ection 2.2.1 . . . resolve[d] two [separate] FAC claims: leaving furniture on the ramp landing (FAC ¶ 10(a)) and removing furniture from the exterior path of travel from the accessible parking to the store's entrance (FAC ¶ 11(a))." (ECF No. 79 at 6; see also ECF No. 24 at 3.) These issues cannot be both separate barriers for the sake of counting the number of claims in the FAC, and one issue for the sake of counting the number of claims resolved by the parties' settlement. Defendant's position is illogical and inconsistent. Thus, the parties' settlement agreement remedied five of plaintiff's claims, not four.

      Third, as a result of the first two misrepresentations, defendant erroneously concludes that plaintiff was only successful on four out of twenty-two claims and argues that "[p]lainitff should only be entitled to 4/22, or 18% of his proposed fees." (Id.) (ECF No. 78 at 4.) When considering defendant's argument, the court uses the appropriate ratio of 5/15 or 33.33%.[3]

      Fourth, defendant claims that "[p]laintiff sought $80,000 in damages, but eventually only received $4,000 in total compensation." (ECF No. 78 at 2.) However, the FAC indicated that

---

[3] This accurate ratio is nearly double defendant's incorrectly calculated ratio. This can be clearly seen when expressing the ratios 4/22 and 5/15 as 60/330 and 110/330, respectively. This is noteworthy because defendant argues that this ratio ought to be a gauge of success, yet defendant undervalues the figure by nearly half.

plaintiff sought the statutory minimum of $4,000 in damages "for each offense." (ECF No. 24 at 8 (emphasis in original)). An "offense" in the context of an Unruh Act claim is a visit to the subject location, during which plaintiff encountered the alleged barriers. See Cal. Civ. Code § 52(a).

According to the FAC, plaintiff visited the subject location in this matter, and encountered the alleged barriers, on one occasion. (ECF No. 24 at 2.) A single such visit supports a request for $4,000 in damages. See Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1014 (C.D. Cal. 2014) ("The [Unruh] [A]ct provides that a plaintiff subjected to discrimination is entitled to recover $4,000 for each occasion on which he was denied equal access").

During discovery, and again in his motion for summary judgment, plaintiff requested $4,000 in damages. (See Best Supp. Decl. at ¶ 3, Exh. A; ECF No. 43-1 at 6.) Thus, under any reasonable interpretation of the record plaintiff only ever sought $4,000 in damages.[4]

Fifth, defendant clearly misstates the record when claiming that plaintiff "does not offer an explanation why FOUR inspections were used for the pre-filing investigation by West Coast CASp ["WCC"]." (ECF No. 78 at 6.) Plainly, WCC only conducted, and billed for, two pre-filing investigations. (See Declaration of Zachary M. Best, ECF No. 74-3 ["Best Decl."] ¶¶ 11–12, Exhs. B–C.) Moreover, plaintiff's attorney explained why he requested that WCC perform a second pre-filing investigation.

> Shortly after WCC's initial investigation, the firm requested that WCC return to the Store to obtain further evidence of non-compliance. . . My firm has significant experience litigating against Starbucks, and was aware that policy issues, such as Starbucks's failure to maintain a clear level landing at the exterior curb ramp, would be contested as "moot." Therefore, it was important prior to filing the lawsuit that Block have adduced evidence of Starbucks's ongoing failure to maintain the clear level landing as asserted by Block as well as his other claims.

(Best Decl. at ¶ 12.)

Sixth, defendant relies heavily on the flawed declaration of A. Mark Hom, defendant's fee expert. (See ECF No. 78; Declaration of A. Mark Hom, ECF No. 78-1 ["Hom Decl."].) Aside

---

[4] Even assuming that plaintiff originally sought $4,000 for each of the fifteen alleged barriers in the FAC, that would total $60,000. Indeed, even multiplying defendant's erroneous "twenty-two barriers" by $4,000 equals $88,000. Under no interpretation of the record could one conclude that plaintiff sought $80,000 in damages at any time during this matter.

from the section entitled "Deductions for Partial Success", defendant's six-page brief does little more than summarize Mr. Hom's conclusions.  (See ECF No. 78; Hom Decl.)  For most of defendant's arguments, Mr. Hom's nineteen-page declaration essentially serves as defendant's opposition brief.  (Id.)

This is not the first time that defendant has used Mr. Hom as a fee expert and relied on him so heavily.  In Crandall v. Starbucks Corp., the United States District Court for the Northern District of California resolved a fees motion after Craig Crandall and Starbucks settled Mr. Crandall's ADA and Unruh Act complaint.  No. 5:14-cv-05316-HRL, 2016 U.S. Dist. LEXIS 68746 (N.D. Cal. May 25, 2016).  Similar to here, in Crandall, the Northern District observed that "[d]efendants' opposition consists of a four-page brief that does little more than summarize the ultimate conclusions of defendants' retained fee auditor, A. Mark Hom.  Hom's 27-page declaration is, in effect, defendants' opposition brief."  Id. at *3 n. 4.

Moreover, many of Mr. Hom's arguments here are similar to those he raised in Crandall, and which the Northern District soundly rejected.  (Compare Hom Decl. ¶¶ 22–75, with Crandall, 2016 U.S. Dist. LEXIS 68746 at *6–12.)  Mr. Hom's arguments and analysis are discussed below in greater detail.  However, Mr. Hom's declaration includes additional non-legal errors that independently undermine the strength of his arguments.

Notably, Mr. Hom fundamentally misstates the number of billing entries provided in this matter as 206 (see Hom Decl. ¶ 48), when there were in fact 457 billing entries submitted along with plaintiff's motion.  (See Supplemental Declaration of Marejka Sacks, ECF No. 79-3 ["Sack Supp. Decl."] ¶ 3; see also Best Decl., Exh. A (147 billing entries); Declaration of Tanya E. Moore, ECF No. 74-4 ["Moore Decl."] Exh. A (117 billing entries); Declaration of Marejka Sacks, ECF No. 74-6 ["Sacks Decl."] Exh. A (127 billing entries); Declaration of Whitney Law, ECF No. 74-8 ["Law Decl."] Exh. A (48 billing entries); Declaration of David Guthrie, ECF No. 74-10 ["Guthrie Decl."] (18 billing entries).)  Interestingly, in Crandall, Mr. Hom also attested to having reviewed 206 billing entries in that matter.  (See Best Supp. Decl., Exh. B at 10.)

What is more, Mr. Hom "double-dips" his deductions from plaintiff's requested fees.  As plaintiff correctly points out, Mr. "Hom deducts all summary judgment fees, and then deducts

additional amounts of that same time as block-billing." (ECF No. 79 at 11; <u>see</u> Hom Decl. ¶¶ 80–83; <u>compare</u> Hom Decl., Exh. 6 at 9, <u>with</u> Exh. 13.)  In the same fashion, Mr. Hom deducts entries that he classified as clerical work and internal conferencing separately, and then again as part of his block-billing deductions.  (<u>See</u> ECF No. 79 at 11; Hom Decl. ¶ 83; <u>compare</u> Hom Decl., Exh. 6, <u>with</u> Hom Decl., Exhs. 9 <u>and</u> 11.)

It appears that Mr. Hom may have used his <u>Crandall</u> declaration as a template for this matter, which is not necessarily fatal.  However, as plaintiff observes Mr. Hom "apparently used his calculations, at least to some extent, from the <u>Crandall</u> action which calls into question the accuracy of his analysis."  (ECF No. 79 at 11.)

Such lack of precision and apparent sloppiness—if not outright deception—undermines Mr. Hom's credibility and is especially troubling, coming from a fee auditor whose expertise involves the detailed-oriented processes of tracking time and calculating fees.

Indeed, defendant's entire position is undermined by the numerous misrepresentations and errors outlined above.  Due to any number of factors, from a busy practice to pressing deadlines, the court acknowledges that briefs may often include inconsequential errors.  But, the number of errors here, coupled with their magnitude, is remarkable.

B.      <u>Request to seal</u>

After taking the fees motion under submission (<u>see</u> ECF No. 77), the court conducted a preliminary review of the redacted briefing.  The court could "not discern any good cause why portions of this briefing should remain sealed . . . [and] preliminarily concluded that it is necessary to disclose certain terms of the settlement in order to reach the merits of plaintiff's motion."  (ECF No. 82 at 1.)  As a result, the court ordered the parties to submit a request to seal, pursuant to the Local Rules.  (<u>Id.</u> at 2.)

1.      **Legal standard**

Under the Local Rules, "[a]ll information provided to the Court in a specific action is presumptively public, but may be sealed in conformance with L.R. 141."  E.D. Cal. L.R. 141.1(a)(1).  "Documents may be sealed only by written order of the Court, upon the showing required by applicable law."  E.D. Cal. L.R. 141(a).  A party seeking to seal documents shall

6

submit a request to seal that "shall set forth the statutory or other authority for sealing, the requested duration, the identity, by name or category, of persons to be permitted access to the documents, and all other relevant information." E.D. Cal. L.R. 141(b).

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" Kamakana v. City & Cty. of Honolulu, 447 F.3d 1172, 1178 (9th Cir. 2006) (citing Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978)). "If, however, the documents are among those which have 'traditionally been kept secret for important policy reasons,' such as grand jury transcripts and pre-indictment warrant materials, they are not subject to the right of public access." In re Midland Nat. Life Ins. Co. Annuity Sales Practices Litig., 686 F.3d 1115, 1119 (9th Cir. 2012) (citing Times Mirror Co. v. United States, 873 F.2d 1210, 1219 (9th Cir.1989)).

While the common law right of access is not absolute, there is "a strong presumption in favor of access to court records." Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1135 (9th Cir. 2003). A party may surmount the strong presumption of access by providing "sufficiently compelling reasons" that override the public policies that favor disclosure. Id. When ruling on a motion to seal, "the court must 'conscientiously balance[ ] the competing interests' of the public and the party who seeks to keep certain judicial records secret." Kamakana, 447 F.3d at 1179. To seal the records, the district court must articulate a factual basis for each compelling reason to seal. Id.

However, the Ninth Circuit Court of Appeals has held that the "compelling reasons" standard does not govern requests to seal discovery documents attached to non-dispositive motions, made pursuant to a valid protective order. See Phillips ex rel. Estates of Byrd v. Gen. Motors Corp., 307 F.3d 1206, 1213 (9th Cir. 2002) ("when a party attaches a sealed discovery document to a non[-]dispositive motion, the usual presumption of the public's right of access is rebutted"). Instead, "a particularized showing of 'good cause' under Federal Rule of Civil Procedure 26(c) is sufficient to preserve the secrecy of sealed discovery documents attached to non-dispositive motions." In re Midland Nat. Life Ins. Co. Annuity Sales Practices Litig., 686 F.3d at 1119.

2.       **Redaction of the fees motion briefing**

The instant matter is not neatly addressed by prior case law. On the one hand, plaintiff's fees motion is non-dispositive. On the other hand, the information redacted from the parties' briefing is not related to any discovery document that was sealed pursuant to a valid protective order. Rather, the information currently under seal is largely information related to the terms of the parties' confidential settlement. The court need not determine which standard is appropriate under these circumstances because, even under the lower "good cause" standard, the parties have failed to demonstrate why the briefing should remain partially sealed.

Each party has asserted that such information should remain sealed pursuant to the terms of the parties' settlement agreement. (See generally ECF Nos. 83–84.) Defendant argues that it is within the court's authority to maintain the confidential intent of the parties, and that the court should do so because defendant "likely would not have entered into this agreement if the disclosure of the terms w[ere] to take place." (ECF No. 84 at 1–2.)

The court agrees with defendant that "[i]t is well established that '[d]istrict courts have inherent power to control their docket'" and the discretion to seal documents. Ready Transp., Inc. v. AAR Mfg., Inc., 627 F.3d 402, 404 (9th Cir. 2010). However, the parties' stipulation to keep the terms of the settlement confidential is not a sufficient reason, on its own, to keep the briefing redacted in this matter. Furthermore, it is the parties' own conduct that has placed the court in a position where it must consider whether to disclose certain terms of the settlement.

The parties agreed to have the court decide a disputed fees motion after the case was settled and closed. Yet, defendant has misrepresented plaintiff's FAC and certain settlement terms in its opposition brief. As a result, defendant's errors play an integral role in the court's decision on the fees motion. At the same time, many of defendant's errors and misrepresentations are conveniently redacted. (See generally ECF No. 78.) Additionally, defendant has redacted an entire section of the brief entitled "Deductions for Partial Success," which largely consists of legal argument. (See Id. at 2–3.) Defendant has offered no explanation as to why such a blanket redaction is necessary. If the court were to leave the briefs redacted, it would also have to file portions of its own decision, including legal analysis, under seal. This is not an acceptable result.

Finally, defendant's remaining argument—that it would not have settled had it known that settlement terms would be disclosed—rings hollow. The court recognizes that it is common practice for parties to bargain for and rely upon the continued confidentially of the terms of a settlement agreement. But, here, defendant chose to vigorously oppose plaintiff's fees motion partially based upon misrepresentations of the very agreement defendant is purportedly concerned with protecting. One would think that if this agreement were so important, then defendant would be intimately familiar with its terms.

Therefore, in light of defendant's misrepresentations and the parties' failure to demonstrate good cause, the parties shall file unredacted versions of their briefing on plaintiff's fees motion (ECF Nos. 74, 78, 79). At the same time, to limit the disclosure of confidential information not related to the resolution of the motion, the settlement agreement between the parties (Best Decl., Exh. R) shall remain under seal.

C.      Plaintiff's fees motions

Plaintiff moves for an award in the amount of $87,639.50, requesting $78,676.00 in attorneys' fees[5] (after voluntarily deducting fees related to clerical work), and $8,963.50 in costs and litigation expenses. (ECF No. 79 at 19.) Defendant asserts that the total award should be $9,505.53, with $6,454.53 in attorneys' fees and $3,051.00 in costs. (ECF No. 78 at 7.)

1.      **Legal standard**

The ADA and the Unruh Act permit a prevailing plaintiff to recover attorneys' fees and costs. 42 U.S.C. § 12205; Cal. Civ. Code § 55. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). Known as the lodestar method of calculation, this is "the guiding light of [the Supreme Court's] fee-shifting jurisprudence." City of Burlington v. Dague, 505 U.S. 557, 562 (1992).

---

[5] Plaintiff's attorney made an error when calculating his total fees request. He subtracted the fees for preparing the reply, rather than adding them to the total. (See ECF No. 79 at 19 ("Plaintiff respectfully requests full recovery of his fees and costs in the initial amount requested, namely $76,914 less $475 for a total of $76,439, together with his fees incurred for the reply, $2,237, for a total award of $74,202 in fees").) Because plaintiff's intention to add the fees together is easily discerned, it is apparent that plaintiff seeks a total of $78,676 in attorneys' fees.

The burden is on the party seeking an award to "submit evidence supporting the hours worked and rates claimed." <u>Hensley</u>, 461 U.S. at 433. "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." <u>Gates v. Deukmejian</u>, 987 F.2d 1392, 1397–98 (9th Cir. 1992). Hours that were not reasonably expended because they were "excessive, redundant, or otherwise unnecessary" should be excluded from the lodestar calculation by the court. <u>Hensley</u>, 461 U.S. at 434.

### 2. **Reasonable hourly rates**

"To determine a 'reasonable hourly rate,' the district court should consider: 'experience, reputation, and ability of the attorney; the outcome of the results of the proceedings; the customary fees; and the novelty or the difficulty of the question presented.'" <u>Chalmers v. City of Los Angeles</u>, 796 F.2d 1205, 1211 (9th Cir. 1986) (citing <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 70 (9th Cir. 1975)). "The reasonable rate should generally be guided by 'the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'" <u>Hiken v. Dep't of Def.</u>, 836 F.3d 1037, 1044 (9th Cir. 2016) (citing <u>Chalmers</u>, 796 F.2d at 1210–11.) "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." <u>Gonzalez v. City of Maywood</u>, 729 F.3d 1196, 1205 (9th Cir. 2013)

Plaintiff is represented by the Mission Law Firm, A.P.C. in San Jose, California and seeks $300 an hour for attorneys Zachary Best and Tanya Moore; $115 an hour for paralegals Marejka Sacks and Whitney Law; and $95 an hour for paralegal David Guthrie. (ECF No. 74-1 at 6.) As plaintiff accurately notes, the Eastern District has definitively set the appropriate hourly rate for Ms. Moore, Ms. Law, and Mr. Guthrie.

In a recent decision, United States Chief District Judge Lawrence J. O'Neill observed that "[t]here has been some inconsistency within this district regarding an appropriate hourly rate to use for Ms. Moore's not infrequent attorney's fees requests." <u>Trujillo v. Singh</u>, No. 1:16-cv-01640-LJO-EPG, 2017 U.S. Dist. LEXIS 70092, at *3 (E.D. Cal. May 8, 2017). "Because of the

10

conflicting hourly rate determinations among similar ADA cases in this division, The Court [in Trujillo] ordered Plaintiff to supplement the record." Id. at *5. Ms. Moore submitted supplemental evidence that the court carefully considered before concluding that "Tanya Moore's requested rate of $300 per hour, as well as $95-$115 for her firm's paralegals" are reasonable. Id. at *8. Specifically, the rates of $115 an hour for Whitney Law and $95 an hour for David Guthrie were adopted as reasonable. Id.

Based upon the rates established by Trujillo, $300 an hour is also a reasonable rate for Mr. Best, who has been practicing law for nearly seven years longer than Ms. Moore, with nearly four years more experience in litigating ADA cases. (Compare Best Decl. ¶¶ 2, 5, with Moore Decl. ¶ 3.) Similarly, $115 an hour is also a reasonable rate for Ms. Sacks, who has four years more experience as a paralegal specializing in civil litigation than Ms. Law, with two years more experience working on ADA actions, nearly exclusively. (Compare Sacks Decl. ¶ 2, with Law Decl. ¶ 2.)

Defendant does not challenge the requested rates for Mr. Best and the paralegals. However, relying on the legal arguments of Mr. Hom, defendant contends that Ms. Moore's rate should be adjusted to $275 an hour. (See ECF No. 78 at 5.) According to Mr. Hom, plaintiff failed to meet his burden to prove that $300 an hour is a reasonable rate for Ms. Moore because plaintiff has not submitted any declarations "from other counsel who attest as to the reasonableness of the rates being requested given the practitioner, the forum, and the nature or difficulty of the case." (Hom. Decl. ¶ 33.) However, Mr. Hom misunderstands the standard here. Such declarations are only one form of acceptable proof of reasonable rates. Indeed, the Ninth Circuit explicitly held that "rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." Hiken, 836 F.3d at 1044.

Mr. Hom also unpersuasively attacks the court in Trujillo for relying on a calculation known as the Laffey Matrix to determine the reasonableness of Ms. Moore's rate. (See Hom Decl. ¶¶ 36–41.) Mr. Hom asserts that the Ninth Circuit gave district courts permission to decline to use the Laffey Matrix, and asserts that the court should do so here. (Id. at ¶ 40 (citing to Prison

11

Legal News v. Schwarzenegger, 608 F.3d 446, 454 (9th Cir. 2010)).)  However, Mr. Hom conspicuously overlooks that in Trujillo, the court adopted a version of the Laffey Matrix that was specifically adjusted to the relevant community within the Eastern District.  See Trujillo, 2017 U.S. Dist. LEXIS 70092, at *6–7 ("The Matrix, which only surveys prevailing rates in the Washington, D.C./Baltimore, MD legal community does not directly correlate to hourly rates for attorneys and paralegals in other parts of the country. . . . However, Plaintiff also presents a rational mechanism for adjusting the Laffey Matrix rates to Fresno's market").

Thus, Trujillo is sufficient and definitive evidence of the reasonable hourly rates for Ms. Moore and her colleagues.  As such, the court finds that the rates requested by plaintiff for his attorneys and paralegals in this matter are reasonable.

### 3.    **Hours reasonably expended**

Defendant asserts that the hours spent in this litigation by plaintiff's attorneys and paralegals are unreasonable for seven reasons: (1) plaintiff only achieved partial or limited success; (2) the attorneys and paralegals failed to declare that their time was kept contemporaneously; (3) the attorneys and paralegals engaged in block billing; (4) the billing entries include clerical tasks; (5) the billing entries include excessive internal conferencing; (6) the billing entries include work related to claims against defendant landlord; and (7) the billing entries include work related to the motions for summary judgment.  (See ECF No. 78 at 2–6.)

#### i.    *Limited success*

"The reasonableness of the fee is determined primarily by reference to the level of success achieved by the plaintiff."  McCown v. City of Fontana, 565 F.3d 1097, 1101–02 (9th Cir. 2009) (citing Hensley, 461 U.S. at 424).  "In evaluating [plaintiff's] level of success, district courts should consider two questions: 'First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded?  Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?'"  A.D. v. California Highway Patrol, 712 F.3d 446, 460 (9th Cir. 2013) (citing McCown, 565 F.3d at 1103).

////

"[R]elated claims will involve 'a common core of facts' or will be based on related legal theories, while unrelated claims will be 'distinctly different,' and based on different facts and legal theories."  Thorne v. City of El Segundo, 802 F.2d 1131, 1141 (9th Cir. 1986) (citing Hensley, 461 U.S. at 434–35).  "If the unsuccessful and successful claims are related, then the court must apply the second part of the analysis, in which the court evaluates the 'significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'  If the plaintiff obtained 'excellent results,' full compensation may be appropriate, but if only 'partial or limited success' was obtained, full compensation may be excessive.  Such decisions are within the district court's discretion."  Id. (internal citations omitted).

Here, all of the claims in plaintiff's FAC focused on making the subject store accessible to persons in wheelchairs.  (See ECF No. 24 at 2–4.)  Each involved a common core of facts and each was brought pursuant to the ADA, Unruh Act, and California Health and Safety Code § 19953 et seq.  (See Id. at 5–9.)  Thus, all claims in this action are related.

While plaintiff concedes that "he did not receive 'all the relief requested' in his FAC via his settlement agreement"—which explicitly resolved five of his fifteen claims—plaintiff nonetheless achieved excellent results.  (ECF No. 79 at 9.)  As plaintiff correctly observes, "what Starbucks agreed to do was change its policies, and commit to ensuring unobstructed access to the paths of travel every 20 minutes, provide an unobstructed counter, and provide accessible seating that treats persons with disabilities with the same dignity afforded its non-disabled patrons."  (Id. at 9–10.)

Importantly, many of the claims in the FAC not addressed by the settlement agreement involved less substantial physical changes to the subject store, compared to the larger policy changes addressed by the settlement.  (See e.g. ECF No. 24 at 4 (". . . restroom door is not adjusted to the required closing period . . . restroom door does not have the proper uninterrupted smooth surface at the bottom of the push side of the door . . . waste receptacle in the men's restroom obstructs required maneuvering clearances . . . coat hooks within the men's restroom are positioned too high").)

////

Yet, defendant argues that plaintiff should not be considered a prevailing party because plaintiff is relying on the catalyst theory to recover fees.  (ECF No. 78 at 3.)  "[T]he 'catalyst theory' is not a permissible basis for the award of attorney's fees under the . . . ADA." Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res., 532 U.S. 598, 610 (2001).  Under the catalyst theory "a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." Id. at 601.  While the FAC claims not addressed by the settlement agreement were voluntarily resolved by defendant (see ECF No. 79 at 8), defendant did not simply resolve all of plaintiff's claims after plaintiff initiated this matter.  The FAC was more than a mere catalyst for voluntary change; it precipitated a protracted legal battle.

After completing discovery, each party filed a motion for summary judgment.  (See ECF Nos. 43–48.)  Then, after an unsuccessful settlement conference, parties were granted five continuances over nearly five months to provide the court with dispositional documents, during which time defendant continued to attempt to make substantive changes to the settlement agreement before signing it.  (See ECF Nos. 57–64.)  Therefore, the catalyst theory does not apply to this situation because plaintiff achieved his desired result—a substantial policy change by Starbucks—through hard-fought settlement negotiations, culminating in an agreement that addressed the most complex of plaintiff's claims, after vigorous opposition by defendant.

Defendant also argues that "[b]ecause of [p]laintiff's very limited success—only 'prevailing' on four out of twenty-two claims . . . [a]ny award of attorney's fees and costs should be reduced by a 18:22 ratio for partial success, or an 82% reduction."  (ECF No. 78 at 4.)  This argument is completely unpersuasive.  When determining the appropriate fees in cases where the prevailing party achieved only limited or partial success, "the Supreme Court has disavowed a test of strict proportionality."  McCown, 565 F.3d at 1104 (citing City of Riverside v. Rivera, 477 U.S. 561, 576 (1986)).  Yet, defendant asks the court to apply such a test of strict proportionality in this case, while failing to even acknowledge the Supreme Court's standard.

Moreover, as explained, defendant's calculations are plainly wrong.  Under a strictly proportion analysis, plaintiff was successful on 33.33% of his claims, not 18%.  As such, even

14

assuming strict proportionality were the appropriate standard, an 82% reduction in fees would be completely unwarranted.

In summary, all of plaintiff's claims were related and he achieved excellent results through a settlement agreement, after considerable litigation. Therefore, no reduction in fees is warranted under the theory of limited success.

ii.    <em>Contemporaneous time keeping</em>

Relying on the legal argument and analysis of Mr. Hom, defendant asserts that plaintiff's billing records should be given less credibility because none of plaintiff's attorneys or paralegals "mention that the time was kept contemporaneously" in their declarations. (ECF No. 78 at 4.)

Plaintiff's most senior counsel, Mr. Best declared "[t]he practice at this firm is to bill time entries contemporaneously with the work performed. The firm uses Clio legal management software to track and chronical time." (Best Decl. ¶ 8.) Thus, even though defendant is technically correct that none of plaintiff's attorneys or paralegals explicitly declared that they did, in fact, keep time contemporaneously in this specific matter, the record includes clear evidence that it is the firm's practice to do so, in general. Defendant provides no reason to question whether that policy was followed here.

iii.    <em>Block billing</em>

When counsel block bills their time in a way that frustrates the court's "efforts to determine whether the fees were, in fact, reasonable. . . such billing practices are legitimate grounds for reducing or eliminating certain claimed hours, but not for denying all fees. . . . the use of block billing does not justify an across-the-board reduction or rejection of <em>all</em> hours." <u>Mendez v. Cty. of San Bernardino</u>, 540 F.3d 1109, 1128–29 (9th Cir. 2008), <u>overruled on other grounds by</u> <u>Arizona v. ASARCO LLC</u>, 773 F.3d 1050 (9th Cir. 2014) (emphasis in original). "[W]here hours are block-billed, a district court should refrain from reducing fees until it first determines whether sufficient detail has been provided so that [the court] can evaluate what the lawyers were doing and the reasonableness of the number of hours spent on those tasks. <u>Sunstone Behavioral Health, Inc. v. Alameda Cty. Med. Ctr.</u>, 646 F. Supp. 2d 1206, 1217 (E.D. Cal. 2009) (internal citations and quotation marks omitted).

Defendant argues, in complete reliance on Mr. Hom's declaration, for a 10% across-the-board reduction in plaintiff's fees due to the use of block billing. (ECF No. 78 at 5.) Not only is such an across-the-board reduction inappropriate, see Mendez, 540 F.3d at 1128–29, but also defendant has made these same unavailing arguments before:

> Hom suggests a 10% reduction in plaintiff's requested award on the ground that block billing was used. Block billing is discouraged where discrete and unrelated tasks are lumped together because that practice can make it difficult, if not impossible, for the court to assess the reasonableness of the time spent on each task. Having reviewed the challenged entries, however, this court finds that many are not block billing, but a detailed description of a task or series of related tasks. Moreover, the alleged instances of block billing contain enough details about the identified tasks to allow the court to assess whether the amount of time spent on them was reasonable.

Crandall, 2016 U.S. Dist. LEXIS 68746, at *7–8.

Mr. Hom's arguments and analysis on block billing here mirror what he put forward in Crandall—paragraph by paragraph, he presents nearly identical wording, with only minor changes. (Compare Hom. Decl. ¶¶ 46–59, with Best Supp. Decl., Exh. B at 10–18.) Indeed, as explained above, in his present declaration Mr. Hom even misstates the number of billing entries in this matter as 206, which was the number of entries he reviewed in Crandall. (Compare Hom. Decl. ¶ 48, with Best Supp. Decl., Exh. B at 10.) Such sloppy work further undermines Mr. Hom's and defendant's credibility.

Just as in Crandall, the court has reviewed the entries challenged here and concludes that most are not block billed, but rather a detailed description of a task or a series of related tasks. Below is a selection of the challenged entries for example:

| Date | Biller | Description | Time Billed |
|------|--------|-------------|-------------|
| 10/30/2015 | Ms. Moore | Reviewed revisions to the JSR by Mr. Singh. Revisions indicate defendant's attempt to delay the action. Telephone call to Mr. Singh in attempt to agree on the proposed dates, offered Mr. Singh a compromise but he refused to discuss it and told me abruptly that we do not have to agree on the dates and requested to have all further communications in writing. | 0.50 |

| 11/13/2015 | Ms. Sacks | Review consultant's availability; set site inspection; email to defense counsel confirming | 0.20 |
|---|---|---|---|
| 03/22/2016 | Mr. Guthrie | Draft Verification for signing. Email to client re review of FAC and Verification. | 0.10 |
| 08/26/2016 | Ms. Moore | Full day of depositions of multiple Starbucks employees, supervisors and managers. Travel to depo location from lodging -1 hour. Depositions started at 9:00 a.m. ended at 4:00 p.m. Travel back to the office 3 hours. | 11.00 |
| 10/04/2016 | Ms. Law | Review expert report attachment; communication with expert | 0.40 |
| 02/07/2017 | Mr. Best | Review draft stip to continue expert deadline. Read and respond to email from Arnett re same | 0.10 |
| 01/25/2018 | Ms. Sacks | Additional communications with defense counsel re settlement; email to the Court confirming settlement and to vacate settlement conference | 0.30 |

As in Crandall, "the alleged instances of block billing contain enough details about the identified tasks to allow the court to assess whether the amount of time spent on them was reasonable," which the court determines it was. Crandall, 2016 U.S. Dist. LEXIS 68746, at *7–8. Therefore, there is no justification for any reduction in fees based on block billing.

### iv. *Clerical tasks*

The Supreme Court has indicated that "purely clerical or secretarial tasks should not be billed at a paralegal [or lawyer's] rate, regardless of who performs them . . . Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it." Missouri v. Jenkins, 491 U.S. 274, 109 S.Ct. 2463, 2471 n. 10 (1989) (internal citations omitted).

Defendant, relying on the analysis of Mr. Hom, asserts that 6.2 hours of plaintiff's billing is for clerical tasks and should be disallowed. (See ECF No. 78 at 5, Hom. Decl. ¶ 83.) Mr. Hom asserts that "[d]ue to Plaintiff's Attorney's block billing, not all of the entries [identified as clerical tasks] are purely clerical but more often a combination of clerical and non-clerical tasks ... [but because of] the block billing, it is impossible to specifically quantify the amount of fees that are billed for clerical tasks." (Hom. Decl. ¶ 63.) The court does not agree that it is impossible to determine which tasks are clerical and which are not. Indeed, plaintiff has conceded that 5.00 hours of Mr. Guthrie's requested time is purely clerical, and has voluntarily

agreed to reduce its requested fees for Mr. Guthrie by 5.00 hours.  (See ECF No. 79 at 13.)

Having reviewed the billing entries, the court agrees that 5.00 hours of Mr. Guthrie's time should be excluded, whereas the remaining 1.20 hours identified are not accurately classified as purely clerical in nature, and were reasonably billed.  (See Hom. Decl., Exh. 9.)  Since plaintiff included this reduction in his final request for fees, no further reduction for clerical tasks is warranted.  (See ECF No. 79 at 13.)

v.    *Internal conferencing*

Defendant, again relying on the arguments of Mr. Hom, asserts that 9.8% of plaintiff's billing entries are for internal conferencing, and that "[f]our percent is the recommended maximum for intra-office conferences. . . [thus] 5.8 percent of hours (9.8 – 4.0) should be disallowed."  (Hom Decl. ¶¶ 73–74; see ECF No 78 at 6.)  Fundamentally, Mr. Hom does not show his calculations to demonstrate that 9.8% of all billing entries are for internal conferencing. In light of his numerous and well-documented errors and misrepresentations, the court does not accept this figure on faith.

Moreover, as with many of his arguments, Mr. Hom has made similar unavailing arguments in the past.  And, once again Mr. Hom "provides no authority for applying a set percentage" as the maximum allowed for internal conferencing.  Crandall, 2016 U.S. Dist. LEXIS 68746, at *12; see also Cruz v. Starbucks Corp., 2013 U.S. Dist. LEXIS 79231, 2013 WL 2447862 at *8 ("Further, the Court finds no authority that suggests that it would be appropriate to follow a bright-line rule as to the percentage of conferencing that is reasonable in any particular case"); Campbell v. Nat'l Passenger R.R. Corp., 718 F. Supp. 2d 1093, 1104 (N.D. Cal. 2010) (declining to apply a set percentage to discount excessive conferencing and clerical work in attorney billings).

The court has independently reviewed the billing entries and determined that plaintiff's internal conferencing was not excessive.  At the same time, plaintiff includes redundant billing entries for some instances of internal conferencing.  In these circumstances, two of plaintiff's representatives have billed for the same time.  "While it is reasonable to spend some time coordinating legal resources, it is not reasonable to double or triple-bill a client for internal

meetings." Gauchat-Hargis v. Forest River, Inc., No. 2:11-CV-02737-KJM, 2013 WL 4828594, at *3 (E.D. Cal. Sept. 9, 2013).  As such, the court disallows the following hours where a paralegal and an attorney, or two attorneys, have billed for the same internal conference:

| Biller | Date | Description | Time Billed | Time Disallowed |
|--------|------|-------------|-------------|-----------------|
| Ms. Law | 9/22/2015 | Review deadline for filing joint status report; confer w/TEM re status of settlement discussions | 0.20 | 0.10 |
| Ms. Law | 10/30/2015 | Multiple emails to and from opposing counsel, conferences with TM re: same, and revisions to joint status report | 0.80 | 0.30 |
| Ms. Sacks | 8/17/2017 | Review file; draft confidential settlement conference statement; conference with ZB re same | 3.30 | 0.30 |
| Ms. Sacks | 9/08/2017 | Confer with ZB re discussions at settlement conference; revise settlement agreement; calculate monetary offer | 0.80 | 0.50 |
| Ms. Sacks | 12/21/2017 | Email Shane Singh re deadline for settlement; conference with ZB re same | 0.20 | 0.10 |
| Ms. Sacks | 1/02/2018 | Review communications with court re settlement conference; conference with ZB re same | 0.20 | 0.10 |
| Ms. Sacks | 1/19/2018 | Draft updated confidential settlement conference statement; confer with ZB re same | 3.20 | 0.10 |
| Ms. Sacks | 1/23/2018 | Conference with ZB re contact with Court; review email from S. Singh with revised settlement agreement; compared to agreed upon revisions; email S. Singh re same | 0.70 | 0.30 |
| Mr. Best | 11/29/2016 | Confer with TM re moving MSJ due date | 0.10 | 0.10 |
| Mr. Best | 12/06/2016 | Discuss with TM meet and confer requirement for MSJ | 0.10 | 0.10 |

Therefore, the court disallows **0.40 hours** of Ms. Law's time; **1.40 hours** of Ms. Sacks' time; and **0.20 hours** of Mr. Best's time because these entries are redundant to hours billed by another attorney in this matter.  See Hensley, 461 U.S. at 434.  ("excessive, redundant, or otherwise unnecessary" hours should be excluded from the lodestar calculation").

////

////

19

vi.     *Work related to defendant landlord*

On April 1, 2016, defendant landlord Mathews and Associates-2, LLC was dismissed from the action.  (See ECF Nos. 26–27.)  Defendant argues that the court should exclude all billing for work related solely to defendant landlord.  (See ECF No 78 at 6; Hom. Decl., ¶¶ 16–79.)  Also, defendant recommends that the court exclude 50% of any billing that occurred prior to April 1, 2016, since such work pertained to the claims against both defendant landlord and defendant Starbucks Corporation.  (Id.)  Defendant cites to no authority to support this recommendation.

Further, the court has independently reviewed the billing entries included prior to April 1, 2016, and finds them to be reasonable and generally for work related to defendant Starbucks Corporation.  (See Moore Decl., Exh. A at 5–10; Law Decl., Exh. A at 2–4; Sacks Decl., Exh. A at 9–10.)  Aside from two stipulations that pertained only to defendant landlord (see ECF Nos. 6, 7, 11 (granting defendant landlord additional time to respond to the complaint); ECF Nos. 21, 26, 27 (dismissing defendant landlord)), plaintiff's counsel would have almost certainly performed the same tasks—conducting site inspections, preparing a joint status report, filing the FAC, etc.— whether or not Starbucks had been the only defendant from the outset.  Indeed, the claims against both defendants were identical (see ECF Nos. 1, 24), and both defendants were represented by the same law firm (see ECF Nos. 12, 78).  Thus, the court declines to reduce these fees by 50% across-the-board.  At the same time, the court agrees that defendant Starbucks should not pay for work solely related to the claims against defendant landlord.  As such the court deducts the following hours from plaintiff's request:

| Biller | Date | Description | Time Billed | Time Disallowed |
|--------|------|-------------|-------------|-----------------|
| Ms. Moore | 8/03/2015 | Order Granting the Parties Stipulation. | 0.20 | 0.20 |
| Ms. Moore | 2/18/2016 | Reviewed and finalized the SAR and correspondence with the client re same. | 0.40 | 0.40 |
| Ms. Moore | 2/18/2016 | Instructions to WL re preparation of the SAR for the landlord only. | 0.40 | 0.40 |

| | | | | | |
|---|---|---|---|---|---|
| Ms. Moore | 2/19/2016 | Preparation for conference with the client, conference with the client re SAR with LL. Notes to the file after the conference and instructions to WL re finalizing the SAR. | 0.50 | 0.50 | |
| Ms. Moore | 3/15/2016 | Communications with MS re finalizing the SAR. | 0.10 | 0.10 | |
| Ms. Moore | 3/17/2016 | Reviewed Notice of Settlement | 0.10 | 0.10 | |
| Ms. Moore | 3/30/2016 | Reviewed Stipulation | 0.10 | 0.10 | |
| Ms. Moore | 3/30/2016 | Settlement/ Non-Binding ADR: Conference with the client and notes to the file. | 0.40 | 0.40 | |
| Ms. Moore | 3/31/2016 | Settlement/Non-Binding ADR: Correspondence with the client. | 1.00 | 1.00 | |
| Ms. Moore | 4/01/2016 | Reviewed Order Dismissing Def | 0.10 | 0.10 | |
| Ms. Law | 7/10/2015 | TC w/Zina Vitcov and note to file; prepare stipulation for extension and email to her | 0.40 | 0.40 | |
| Ms. Law | 2/18/2016 | Prepare settlement agreement for landlord only | 0.30 | 0.30 | |
| Ms. Law | 2/19/2016 | Email to counsel with draft settlement agreement for landlord only | 0.10 | 0.10 | |
| Ms. Law | 2/29/2016 | Follow up email to Singh re: landlord settlement agreement | 0.10 | 0.10 | |
| Ms. Sacks | 3/15/2016 | TC Shane Singh regarding settlement; obtain monetary offer for landlord only; note to file | 0.20 | 0.20 | |
| Ms. Sacks | 3/16/2016 | Review email from Shane with counter for landlord; relay offer; note to file | 0.20 | 0.20 | |
| Ms. Sacks | 3/17/2016 | Review and revise notice of settlement as to landlord | 0.20 | 0.20 | |
| Ms. Sacks | 3/17/2016 | Review email from Shane Singh; revise agreement with landlord; email to Singh for final approval | 0.30 | 0.30 | |
| Ms. Sacks | 3/18/2016 | Review email from client; email settlement to defense counsel; calendar payment due date; prepare CCDA form and attachment | 0.50 | 0.50 | |

Therefore, the court disallows **3.30 hours** of Ms. Moore's time; **0.90 hours** of Ms. Law's time; and **1.40 hours** of Ms. Sacks' time because these entries are for work related solely to defendant landlord Mathews and Associates-2, LLC. See <u>Hensley</u>, 461 U.S. at 434.

      vii.    *Motions for summary judgment*

The Ninth Circuit has held "that a plaintiff who is unsuccessful at a stage of litigation that

was a necessary step to her ultimate victory is entitled to attorney's fees even for the unsuccessful stage." Cabrales v. Cty. of Los Angeles, 935 F.2d 1050, 1053 (9th Cir. 1991). Here, plaintiff was not unsuccessful on his motion for summary judgment, as the parties reached a stipulation before the court decided either party's motion for summary judgment. (ECF Nos. 43, 44, 50). Nonetheless, without citing to any authority, defendant argues that plaintiff's billings related to preparing and filing the motion for summary judgment ought to be excluded because the work was moot. (See ECF No. 78 at 6, Hom. Decl. ¶¶ 80–82.)

However, the posture of this case and the July 20, 2017 hearing on the motions for summary judgment (see ECF No. 50) apparently contributed to the ultimate agreement reached by the parties. Plaintiff asserts that defendant "had shown no interest in settlement prior to summary judgment." (ECF No. 79 at 15; see also ECF No. 43 at 3.) Plaintiff's characterization of events is more persuasive here, as defendant's credibility has been eroded due to multiple errors and misrepresentations.

As a result, the court determines that the time billed for preparing and filing the motion for summary judgment is reasonable because the motion was an important step toward the ultimate settlement here. See Cabrales, 935 F.2d at 1053.

### 4. Costs and Litigation Expenses

In 42 U.S.C. § 12205, Congress authorized a district court, in its discretion, to allow the prevailing party to recover reasonable attorneys' fees, including litigation expenses and costs. The statutory provisions of the ADA provide direct authority for the award of expert witness fees, travel expenses, and the preparation of exhibits, as litigation expenses under the ADA. See Lovell v. Chandler, 303 F.3d 1039, 1058 (9th Cir. 2002).

Here, plaintiff bills for two pre-filing investigations by West Coast CASp ("WCC"), as well as two site inspections, expert travel, and preparation for deposition by TABA Architecture. (See ECF No. 74-1 at 15–16, Best. Decl., Exhs. B, C, G–I.)

Inexplicably, defendant asserts that only $985 should be allowed for the services of WCC because WCC allegedly performed four pre-filing investigations, which plaintiff allegedly failed to justify. (ECF No. 78 at 6.) As explained, defendant's characterization here is plainly incorrect.

22

WCC only conducted, and billed for, two pre-filing investigations. (See Best Decl. ¶¶ 11–12, Exhs. B–C.) Moreover, plaintiff's attorney sufficiently explained why he requested that WCC perform a second pre-filing investigation. (Id.)

Without citing to any authority, defendant also asserts that the court should disallow one-half of TABA's costs because the billing entries are vague. (ECF No. 78 at 6.) This argument is unavailing. While the billing entries are not excessively detailed, the court can clearly determine what services TABA performed and billed for, which the court finds to be reasonable.

Therefore, after reviewing the billing entries (see ECF No. 74-1 at 11, 12; Best Decl., ¶ 11–27, Exhs. B–Q), the court determines that plaintiff's requested costs and litigations expenses totaling $8,963.50 are reasonable, and no reduction is warranted.

III.    CONCLUSION

The parties have failed to demonstrate good cause to justify the redaction of their briefing on plaintiff's fees motion. Moreover, plaintiff's fees motion is reasonable and his requests warrant little to no reduction, whereas defendant's opposition is significantly undermined by numerous errors and misrepresentations. As such, a reduction of $1,641.50 from plaintiff's fees request is warranted. No reduction in requested costs and litigation expenses is warranted, however. The following chart summarizes the reasonable fees, costs, and litigation expenses in this matter.

| Biller | Time Requested | Time Disallowed | Time Allowed | Reasonable Hourly Rate | Total Fees Allowed |
|---|---|---|---|---|---|
| Zachary Best, Attorney | 85.00 | .20 | 84.80 | $300.00 | $25,440.00 |
| Tanya Moore, Attorney | 97.80 | 3.30 | 94.50 | $300.00 | $28,350.00 |
| Marejka Sacks, Paralegal | 189 | 2.80 | 186.20 | $115.00 | $21,413.00 |
| Whitney Law, Paralegal | 16.40 | 1.30 | 15.10 | $115.00 | $1,736.50 |

| David Guthrie, Paralegal | 1.00 | n/a[6] | 1.00 | $95.00 | $95.00 |
|---|---|---|---|---|---|
| | | | | **Total Fees Allowed** | $77,034.50 |
| | | | | **Costs and Litigation Expenses Allowed** | $8,963.50 |
| | | | | **TOTAL** | $85,998.00 |

Accordingly, it is HEREBY ORDERED that:

1. Within seven days of this order, the parties shall file unredacted versions of their briefing on plaintiff's fees motion (ECF Nos. 74, 78, 79), except that the settlement agreement between parties (Best Decl., Exh. R) shall remain under seal.

2. Plaintiff's motion for attorneys' fees, costs, and litigation expenses is GRANTED on the terms detailed in this order.

3. The court awards plaintiff $77,034.50 in attorneys' fees, and $8,963.50 in costs and litigation expenses, for a total award of $85,998.00.

Dated:  September 10, 2018

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

14/15-991.Block v. Starbucks.Fee Order

---

[6] No further reduction of Mr. Guthrie's time is warranted, beyond the 5.00 hours plaintiff voluntarily excluded in his reply brief.  (See ECF No. 74-1 at 17; ECF No. 79 at 13)